UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 2:16CR178-PPS |
| ) | |
| RICHARD E. GEARHART, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Defendant Richard Gearhart entered a plea of guilty to a charge of conspiracy to commit securities fraud and is serving a sentence of 60 months' imprisonment at the federal prison camp in Tucson, Arizona. The online portal of the Federal Bureau of Prisons (www.bop.gov) indicates that Gearhart's projected release date is December 16, 2025. Gearhart's Presentence Report adequately sets for the facts of the case. [DE 194.] Suffice it to say that Gearhart and his co-defendant (George McKown) concocted a Ponzi scheme that defrauded more than $5 million from several dozen investors, many of whom were north of eighty years old. The scheme spanned several years and involved a bevy of lies in the form of lulling statements trying to keep their victims at bay.

Now pending before me is Gearhart's motion seeking compassionate release from his incarceration, filed pursuant to 18 U.S.C. §3582(c)(1)(A). [DE 368.] The government has filed its response in opposition to the motion, and Gearhart has filed a reply. [DE 372, 374.] Gearhart filed his traverse after he was admonished in my order

of July 14, 2022 to apply himself to preparing and filing a reply rather than persisting in inappropriate attempts to speak to me on the telephone. [DE 373.]

As amended by the First Step Act, §3582(c)(1)(A) authorizes a defendant to seek a modification of an imposed term of imprisonment upon a showing that "extraordinary and compelling reasons warrant such a reduction." The first issue in these types of matters is administrative exhaustion. Before coming to court, a person seeking compassionate release must first request relief from the warden of his institution. The statute requires a defendant to "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf." §3582(c)(1)(A). The government concedes that Gearhart has satisfied the exhaustion requirement. [DE 372 at 6.]

After the exhaustion issue, §3582(c)(1)(A) next requires a determination whether the defendant presents "extraordinary and compelling reasons" that warrant a reduction of the sentence previously imposed, and thereafter, if necessary, consideration of the sentencing factors set forth in §3553(a).[1] Gearhart presents two reasons in support of his request for compassionate release. Neither is persuasive.

First Gearhart contends that the prison is providing him inadequate medical care for serious medical conditions, and that this circumstance presents an extraordinary and compelling reason to consider compassionate release. Gearhart is 72 years old, and

---

[1] Gearhart suggests that his request for release from incarceration and the substitution of home confinement is not a reduction of his sentence. [DE 368 at 7.] I would wager that 100% of inmates (and judges) surveyed would disagree.

has poor cardiac health as well as COPD. He maintains that he likely needs a pacemaker in view of recent episodes of bradycardia (slow heart rate), and that medical tests ordered by a cardiologist in March 2022 had not been performed as of June when he filed his motion. [DE 368 at 4-5.] The government's response addressing this argument is thoughtful and persuasive.

Gearhart relies on a report of the DOJ's Office of Inspector General concerning the provision of health services within the BOP and wait times for medical appointments in particular. [DE 368 at 6.] But the OIG report offers no support for Gearhart specifically because its findings and recommendations were not based on health care at Gearhart's institution and have no particular application to his case.

Next, as the government points out, the institutional records Gearhart has provided evidence a considerable amount of medical attention to Gearhart's heart health:

> Defendant provided medical history to show his visits to the internal medical facilities at USP Tucson, December 2021 and January 2022 transports to a local emergency room, consultations with Banner Medical Center in January of 2022 and consultations with Pima Heart and Vascular for tests including a consultation with a cardiologist on March 28, 2022 and a further testing at Pima Heart and Vascular including an EKG in June of 2022.

[DE 372 at 7.] This kind of medical attention does not readily support a conclusion that Gearhart's health is being neglected. Furthermore, Gearhart's protestations about the urgency of his cardiac condition are belied by the details in these recent medical records. In the two instances when he was taken to an ER for shortness of breath and

3

slow heart rate, Gearhart was discharged in stable and ambulatory condition, subject to further cardiac follow-up. [DE 368 at 18, 25.] During his later ER visit in January 2022, the attending physician noted that he had read Gearhart's EKG, and found that his "exam, vitals, labs and studies were not suggestive of an emergent condition." [*Id*. at 26.] The government points out that Gearhart was returned to Pima Heart and Vascular on June 2, several weeks before he filed his motion, but has not provided evidence of the findings or recommendations from that visit. [DE 372 at 9.] This is true even of Gearhart's reply memo, filed almost a month after the government pointed out this lack of the most recent medical information.

Delays in health care are routine, and no doubt particularly so during the extreme demands imposed by the COVID pandemic. The record does not demonstrate that the BOP is failing to address urgent or life-threatening medical conditions suffered by Gearhart. To the contrary, in response to his most urgent episodes Gearhart has been taken to a hospital emergency department, from which he has been discharged each time after doctors insured that his condition was not emergent. Gearhart's cardiac health is being managed by the BOP, and Gearhart's dissatisfaction with the timing of tests does not present an extraordinary and compelling reason to release him from his term of imprisonment.

Risks associated with the COVID pandemic are the other basis on which Gearhart seeks compassionate release. Although Gearhart has received both a vaccine shot and a booster, he argues that COVID-19 remains a risk to his "fragile health." [DE

4

368 at 7.] A defendant's unusual or extreme vulnerability to COVID-19 might be shown to warrant an early release from imprisonment based on the "extraordinary and compelling" standard. Nevertheless, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020). In order to meet the applicable standard, a prisoner could demonstrate that "his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *United States v. Melgarejo*, No. 12-cr-20050, 2020 WL 2395982, at *3 (C.D.Ill. May 12, 2020).

Gearhart contends that his institution in Tucson has not performed random COVID testing in over a year, such that its reporting of COVID cases is unreliable. [*Id*.] But testing of those reporting symptoms continues, and discloses, as of August 10 as reported at www.bop.gov/coronavirus, no confirmed active cases among inmates and 7 among staff at FCI Tucson. In my view, contrary to Gearhart's, these numbers, and the fact that the facility increased operational modifications in May in response to an increase in COVID cases at that time, demonstrate that the prison is responding appropriately to the risk the latest COVID variants pose to its inmate population, including Gearhart. This is so despite the unfortunate COVID deaths Gearhart cites, all

5

of which have occurred among inmates at the United States Penitentiary at Tucson, a high security facility separate from the Federal Prison Camp facility in which Gearhart is housed.

The Seventh Circuit has concluded that "for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021). *See also United States v. Ugbah*, 4 F.4th 595 (7th Cir. 2021). I am aware of the Seventh Circuit's caution to consider the individualized arguments and evidence of each defendant who petitions for compassionate release. *United States v. Rucker*, 27 F.4th 560, (7th Cir. 2022). I do so here, and, particularly in view of present conditions at FPC Tucson, am not persuaded that Gearhart has shown that his medical conditions place him in "the small minority of federal prisoners" within what the Court of Appeals has called the *Broadfield-Ugbah* exception. *United States v. Newton*, 37 F.4th 1207, 1210 (7th Cir. 2022).

## Conclusion

I do not diminish the reality or the seriousness of either Richard Gearhart's heart health issues, or the risks of COVID infection dispute full vaccination. But I find that neither is shown to present "extraordinary and compelling reasons" warranting a reduction of Gearhart's sentence. The BOP appears to be providing adequate cardiac care to Gearhart. And although we are experiencing another wave of an especially infective variant of COVID, we now have – and Gearhart himself has – the additional

6

protection of vaccines that have proven effective in reducing the rate of infection and in mitigating the seriousness of symptoms in the event of infection with the COVID virus.

The special authority granted to sentencing judges by the recent amendment to §3582(c)(1)(A) is quite narrow, and understandably so, because it comes at the cost of truncating the carefully measured term of imprisonment previously imposed, at the expense of all the sentencing factors and goals weighed in determining that sentence. Because Gearhart does not present an extraordinary and compelling reason for compassionate release, I do not take the "unnecessary step two" of reweighing the sentencing factors identified in 18 U.S.C. §3553(a). *Newton*, 37 F.4th at 1210, citing *United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021) (applicable sentencing factors in §3553(a) need to be considered only if the sentencing judge finds an extraordinary and compelling reason for relief).

ACCORDINGLY:

Defendant Richard E. Gearhart's Emergency Motion Under 18 U.S.C. 3582(c)(1)(A) – Compassionate Release" [DE 368] is DENIED.

SO ORDERED.

ENTERED: August 11, 2022.

                                                      /s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT